NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARMAINE PHILLIPS, | Civil Action No.: 19-13427 |
| Plaintiff, | |
| v. | |
| | **OPINION** |
| NEW JERSEY TRANSIT, *et al*. | |
| Defendants. | |

**CECCHI, District Judge.**

This matter comes before the Court on two motions to dismiss Plaintiff Charmaine Phillip's ("Plaintiff") Complaint (ECF No. 1-2 ("Compl.")) pursuant to Federal Rule of Civil Procedure 12(b)(6): (1) Defendant Alexy Ayala's ("Ayala") motion to dismiss (ECF No. 9); and (2) Defendants New Jersey Transit Corporation ("NJ Transit"), Sarah Bernal ("Officer Bernal"), and Dennis Wells' ("Sergeant Wells") (collectively, the "State Defendants") motion to dismiss (ECF No. 10). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, both motions are granted, and the Amended Complaint is dismissed.

## I. BACKGROUND

This case arises out of the filing of an allegedly false report by Defendant Ayala and her stepson, non-moving Defendant Carlos Bruno ("Bruno"),[1] to Defendant NJ Transit's Police Department regarding a vehicular incident at or near Newark Penn Station. After receiving the allegedly false report, Defendant Officer Bernal initiated an investigation into the matter, which led to the arrest of Plaintiff. Plaintiff asserts that the NJ Transit Police Department's investigatory

---

[1] While Bruno has not filed a motion to dismiss, he did file a motion to appoint pro bono counsel on February 14, 2020 (ECF No. 22), which was denied on May 14, 2020 (ECF No. 32).

procedures were flawed, particularly those concerning her identification by Ayala as the culprit of the crime. Plaintiff was charged with four crimes in state court and spent forty-four days in jail before she was released on her own recognizance. Plaintiff was then prosecuted and indicted for the crimes. Before trial, Plaintiff succeeded on a motion to suppress out-of-court and in-court identifications, and the prosecutor subsequently dropped all charges against her. In the instant action, Plaintiff asserts that Ayala, Bruno, and the officers involved in her investigation engaged in malicious prosecution, but she has failed to overcome the presumption of probable cause afforded by the grand jury indictment. Plaintiff's other subsidiary claims suffer from pleading deficiencies.

### a) Factual Background

The following facts are accepted as true for purposes of the instant Motion. On July 27, 2015, Plaintiff and her non-party husband were departing Newark Penn Station when Ayala walked up to their vehicle and accused them of striking her automobile. Id. at 3, ¶ 3. Plaintiff alleges that "[a]t no time did their vehicle make any contact with any other vehicle at or near Newark Penn Station." Id. Plaintiff and her husband then drove home. Id.

Thereafter, Ayala and her stepson Bruno appeared at the NJ Transit Police Department and reported that "[P]laintiff's vehicle had struck [Ayala's] vehicle and left the scene and also that [] [P]laintiff pointed a handgun at [Ayala] and threatened to shoot her." Id. at 4, ¶¶ 4, 6. Ayala provided photographs that she had taken of Plaintiff's vehicle and the license plate to Defendant Officer Bernal (a police officer employed by Defendant NJ Transit) and Officer Bernal's supervisor, Sergeant Wells. Id. at ¶ 5. She also provided a written statement to Officer Bernal. Id. at ¶ 7. Officer Bernal ran the license plate number of the vehicle, which Ayala had provided, and showed Ayala Plaintiff's driver's license photo before Ayala had identified Plaintiff as the perpetrator. Id. at ¶ 8. Based on this information, unnamed members of the NJ Transit Police

Department went to Plaintiff's home and arrested her and her husband without a warrant. Id. at ¶ 9. Plaintiff maintained her innocence and no weapon was ever recovered. Id. at 3, ¶ 3; id. at 5, ¶ 15.

Following the arrest, Officer Bernal brought Ayala to the scene to make an identification. Id. at 4, ¶ 10. Plaintiff asserts that Bernal did not follow the proper protocol for an identification by, for example, bringing out her and her husband in handcuffs. Id. at ¶ 11. At the scene, Ayala identified Plaintiff as the person who had pointed a gun at her. Id. at 5, ¶ 12. On July 27, 2015, Plaintiff was charged with aggravated assault, possession of a handgun used to threaten another, possession of a handgun without a permit and obstruction of justice. Id. at ¶ 17. She was transferred to the Essex County Jail the next day. Id. at ¶ 18. Initially, Plaintiff was unable to post bail and she remained incarcerated at the Essex County Jail for forty-four days. Id. at ¶ 19. Bail was subsequently reduced upon motion by Plaintiff. Id. at ¶ 20.

After bail was reduced, Plaintiff was released on her own recognizance on September 19, 2015 and was prosecuted for the next eighteen months. Id. at ¶¶ 20–21. On October 22, 2015, a grand jury indicted Plaintiff on four counts: fourth degree aggravated assault, second degree unlawful possession of a weapon, second-degree possession of a weapon for an unlawful purpose, and fourth degree obstruction of the administration of law. ECF No. 10-4. Plaintiff subsequently filed a motion to suppress an out-of-court and in-court identification. Compl. at 6, ¶ 22. On March 1, 2017, a *Wade* hearing on the motion to suppress was conducted, during which Bernal and Ayala testified on behalf of the State. Id. Plaintiff's motion to suppress was granted on March 6, 2017. Id. at ¶ 23. The Complaint alleges that the state court found that: NJ Transit Police procedures were flawed, Bernal's testimony was not credible, the show-up identification was impermissibly suggestive, the officers failed to properly record the identification, and the victim had limited

opportunity to observe the perpetrators. Id. at ¶ 23.  On March 10, 2017, all charges against the Plaintiff were dismissed by motion of the prosecutor. Id. at ¶ 24.

Plaintiff alleges that, as a result of the Defendants' actions, in addition to being unjustly detained, she suffered "emotional distress and anxiety; the loss of her employment and other economic harm; and the temporary loss of custody of her sons." Id. at ¶ 26.

### b)  Procedural Background

On June 5, 2019, Plaintiff filed the instant Complaint against the State Defendants, Ayala, and Bruno. ECF No. 1-2. [2]  The Complaint asserts seven causes of action:  malicious prosecution against all Defendants (Count I); *Monell* liability against the State Defendants (Count II); violations of the New Jersey Civil Rights Act (the "NJCRA"), N.J.S.A. § 10:6-1, *et seq.* and the New Jersey State Constitution, Article I, ¶¶ 5 & 7 against the State Defendants (Count III); discrimination in violation of New Jersey's Law Against Discrimination (the "NJLAD"), N.J.S.A. § 10:5-1, *et seq.* against the State Defendants (Count IV); abuse of process against Ayala and Bruno (Count V); intentional and/or negligent infliction of emotional distress against all Defendants (Count VI); and damages under New Jersey's Punitive Damages Act, N.J.S.A. § 2A:15-5.9, *et seq.* against Officer Bernal, Sergeant Wells, Ayala, and Bruno (Count VII). Id.; ECF 30.[3]

---

[2] On May 1, 2020, the parties entered a partial stipulation of dismissal; however, all counts remain as to at least one defendant. ECF No. 30.  The counts remaining as to NJ Transit are Counts I, II, III, IV, and VI; the counts remaining as to Officer Bernal and Sergeant Wells are Counts I, II, III, IV, VI, and VII; and the counts remaining as to Ayala and Bruno are Counts I, V, VI, and VII. *See* id.  The Court will not address any arguments in the instant motions to dismiss that correspond to a dismissed claim, as they are rendered moot.

[3] Each count was originally asserted against all Defendants but, after the partial stipulation of dismissal (ECF 30), the counts are now limited to certain Defendants.

On October 30, 2019, Ayala filed the instant motion to dismiss arguing that Plaintiff has failed to state a claim against her under Counts I, V, VI, and VII because there are insufficient facts pleaded to support a cause of action for malicious prosecution, abuse of process, and intentional or negligent infliction of emotional distress. ECF No. 9-1. On November 1, 2019, the State Defendants filed the instant motion to dismiss arguing that Plaintiff has failed to state a claim against them under Counts I, II, III, IV, VI, and VII because: (1) they are entitled to sovereign immunity from the section 1983 and NJCRA claims (ECF No. 10-7 at 13–15; *see* ECF No. 13 at 2–3); (2) Sergeant Wells is entitled to qualified immunity from the section 1983 and NJCRA claims (ECF No. 10-7 at 27–30); (3) the State Defendants are not amenable to suit under section 1983, *Monell*, and the NJCRA; (id. at 10–13, 15); (4) there are insufficient allegations to support a cause of action for malicious prosecution or a violation of the NJCRA, the New Jersey state Constitution, or the NJLAD (ECF No. 10-7 at 8–10, 15–18); and (5) Plaintiff did not file a notice of tort claim under the New Jersey Tort Claims Act (the "NJTCA"),[4] which bars certain claims— violation of the NJCRA, the New Jersey Constitution, and intentional and negligent infliction of emotional distress—and punitive damages (id. at 20–27, 33).

On December 2, 2019, Plaintiff filed an opposition to Ayala's and the State Defendants' motions to dismiss, arguing that: (1) she has alleged sufficient facts to support a cause of action for malicious prosecution (ECF No. 12 ("Opp.") at 8–15); (2) the State Defendants are amenable to suit under section 1983 and are not entitled to sovereign immunity (id. at 15–17); (3) qualified immunity should be denied (id. at 17–18); and (4) Ayala's and the State Defendants' motions to dismiss all remaining claims are premature (id. at 18). Plaintiff did not address the State

---

[4] In New Jersey, any claim against a public entity or a public employee relating to a cause of action for personal injury "shall be presented . . . not later than the 90th day after accrual of the cause of action." N.J. Stat. Ann. § 59:8-8 ("notice of tort claim").

Defendants' arguments with regard to the NJTCA's requirement to file a notice of tort claim. *See generally* id. On December 6, 2019, the State Defendants filed a reply in further support of their motion to dismiss. ECF No. 13.[5]

On August 27, 2020, the Court entered an Order to Show Cause directing Plaintiff to "show cause as to why Counts I–II and VI–VII of the Complaint should not be dismissed as to the State Defendants for failure to file a notice of tort claim." ECF No. 36. Plaintiff conceded that she did not file a notice of tort claim and that her negligent infliction of emotional distress claim under Count VI should be dismissed as to the State Defendants. Id. at 1, 3. Plaintiff argued that her malicious prosecution, section 1983, and intentional infliction of emotional distress claims are not subject to the NJTCA's notice requirements and likewise, punitive damages may be obtained despite a failure to provide notice. Id. at 1–3.

## II.  LEGAL STANDARD

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions . . . will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

---

[5] On December 17, 2019, the Court entered an Order (ECF No. 15) granting Ayala's request (ECF No. 14) to adjourn her reply by thirty days and thus setting a deadline for the reply of January 15, 2020. Ayala did not file a reply thereafter.

*Iqbal*, 556 U.S. at 678 (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis: "First, the factual and legal elements of a claim should be separated . . . . Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citations omitted).[6]

## III.  DISCUSSION

After considering the arguments for and against dismissal, the Court finds that the Complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

### a)  Count I:  Malicious Prosecution (asserted against all Defendants)

In Count I of the Complaint, Plaintiff alleges that all Defendants maliciously initiated a criminal prosecution against her even though she "had not committed any infraction to legally justify her arrest nor did there exist sufficient facts for a finding of probable cause." Compl. at 7, ¶¶ 2–3, 5. Plaintiff specifically alleges that Officer Bernal and Sergeant Wells "acted under the color of state law" and in "violation[] of [P]laintiff's clearly established constitutional rights," which leads the Court to construe her malicious prosecution claim against the State Defendants as a section 1983 claim. *See id.* at ¶ 6; 42 U.S.C. § 1983 ("Every person who, under color of [law] subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

---

[6] When assessing a motion to dismiss under Rule 12(b)(6), this Court is limited to considering the allegations in the complaint, exhibits attached to the complaint, matters of public record, and indisputably authentic documents on which a plaintiff's claims are based. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

injured."); *Woodyard v. Cty. of Essex*, 514 Fed. Appx. 177, 180 (3d Cir. 2013) (claims of constitutional violations against state actors must be brought pursuant to section 1983). Plaintiff's malicious prosecution claim against Ayala and Bruno is brought pursuant to New Jersey state common law. Compl. at ¶ 7. For the reasons set forth below, Count I is dismissed.

    1. Sovereign Immunity

First, the Court addresses the State Defendants' argument that they are entitled to sovereign immunity from the section 1983 claim. ECF No. 13 at 2–3. The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has "extended the Eleventh Amendment's reach to suits by in-state plaintiffs, thereby barring all private suits against non-consenting States in federal court." *Lombardo v. Pa., Dep't of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008) (emphasis omitted) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890)). The Eleventh Amendment also immunizes "those entities that are so intertwined with [the state] as to render them 'arms of the state.'" *Karns v. Shanahan*, 879 F.3d 504, 512–13 (3d Cir. 2018) (citing *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 545 (3d Cir. 2007), *amended on reh'g* (Mar. 8, 2007)). Courts examine three factors to determine whether an entity is an 'arm of the state': "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." *Bowers*, 475 F.3d at 546.

In *Karns*, the Third Circuit analyzed these three factors to determine whether NJ Transit qualified as an arm of the state for the purposes of sovereign immunity against a section 1983 claim. 879 F.3d at 513–20. The *Karns* court found that the first factor regarding payment of the judgment did not favor finding sovereign immunity because New Jersey is under no obligation to

reimburse NJ Transit for its judgments and because NJ Transit "concede[d] that it is not entirely reliant on state funds but rather that it receives a 'combination of federal, state, and local funds' to balance its budget." *Id.* at 516. However, the second factor, status under state law, "strongly favor[ed]" finding sovereign immunity because NJ Transit is part of New Jersey's executive branch, "New Jersey's statutes consider it an instrumentality of the State," its transit officers are vested with state police powers, and New Jersey state caselaw regards it as an agency of the state. *Id.* at 517–18. For the third factor, "autonomy of the entity," New Jersey's "fairly 'substantial control' over NJ Transit counseled in favor of according it Eleventh Amendment immunity." *Id.* at 518. After balancing the three factors, the Third Circuit held that NJ Transit qualified as an arm of the state entitled to Eleventh Amendment immunity, which in turn functions as an absolute bar to any section 1983 claims against NJ Transit and NJ Transit officers acting in their official capacities. *Karns*, 879 F.3d at 519; *see Kneisser v. McInerney*, No. 15-07043, 2018 WL 1586033, at *12 (D.N.J. Mar. 30, 2018).

Notwithstanding *Karns*, Plaintiff argues (Opp. at 15) that NJ Transit may not assert sovereign immunity in this action in light of recent legislation referenced in *Robinson v. New Jersey Transit Rail Operations, Inc.*, 776 F. App'x 99, 100 (3d Cir. 2019). In *Robinson*, 776 F. App'x at 100, the Third Circuit held that NJ Transit "may not assert sovereign immunity as a defense to claims arising under certain federal statutes, including FELA [the Federal Employers' Liability Act]," because of the passage of the New Jersey Transit Corporation Employee Protection Act (the "NJ Transit Employee Act"), N.J. Stat. Ann. § 27:25-24.1, 24.2. The NJ Transit Employee Act states that NJ Transit and its subsidiaries cannot assert "any defense of jurisdictional or substantive sovereign immunity with respect to any claim or cause of action arising under the 'Federal Employers' Liability Act' (45 U.S.C. s.51 et seq.), the 'Railway Labor Act' (45 U.S.C. s.151 et seq.), the 'Railroad Retirement Act of 1974' (45 U.S.C. s.231 et seq.), the 'Railroad

Retirement Tax Act' (26 U.S.C. s.3201 et seq.), the 'Railroad Unemployment Insurance Act' (45 U.S.C. s.351 et seq.), the 'Federal Railroad Safety Act' (49 U.S.C. s.20101 et seq.), and 49 C.F.R. parts 200-272." N.J. Stat. Ann. § 27:25-24.2.

Plaintiff's argument is unpersuasive. Unlike the plaintiff in *Robinson*, Plaintiff herein does not assert any claims arising under the aforementioned statutes or regulations, and as such, the NJ Transit Employee Act is inapplicable. *See id.*; Compl. Moreover, Plaintiff does not argue that NJ Transit waived its sovereign immunity or consented to suit under section 1983. *See* Opp. at 12; *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark*, 344 F.3d 335, 345 (3d Cir. 2003) (waiver of Eleventh Amendment immunity will be found "only where the state's consent is stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.") (alteration in original) (internal quotation marks omitted); *see also Allen v. New Jersey State Police*, 974 F.3d 497, 506 (3d Cir. 2020) (finding that the NJTCA "does not constitute waiver of immunity from suit in federal court; the statute reflects a limited waiver only of the State's immunity from suit in *state* court"). Accordingly, NJ Transit is entitled to sovereign immunity and any section 1983 claims against it are dismissed. *See Allen*, 974 F.3d at 506 (affirming dismissal of malicious prosecution claim on the basis of Eleventh Amendment immunity where state agency defendant was an arm of the state); *Karns*, 879 F.3d at 519.

The same conclusion applies to the section 1983 claim against Officer Bernal and Sergeant Wells to the extent that they are being sued in their official capacities as officers of NJ Transit. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (internal citation omitted); *Allen*, 974 F.3d at 506; *Karns*, 879 F.3d at 519. However, because Plaintiff also brings

his section 1983 claims against Officer Bernal and Sergeant Wells in their individual capacities, that portion of the claim may proceed. *See* Compl. at 2, ¶¶ 3–4 (alleging that Officer Bernal and Sergeant Wells are being sued individually and in their official capacities).

### 2. Amenability to Suit Under Section 1983

Next, setting aside the issue of immunity, the Court will analyze whether the State Defendants are amenable to suit under section 1983 and if so, whether Plaintiff has stated a claim for a violation of section 1983 under a malicious prosecution theory.[7] A plaintiff seeking relief under section 1983 must establish that the individual or entity who committed the constitutional violation is a "person" for the purposes of section 1983. 42 U.S.C. § 1983; *see Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1172 (3d Cir. 1997). "States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes" are not "persons" under section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989); *see Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 365 ("*Will* establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court."). As discussed above, NJ Transit is an arm of the state. Therefore, it is not a "person" under section 1983 and is not amenable to suit. *Karns*, 879 F.3d at 519.

By contrast, the Court finds that Officer Bernal and Sergeant Wells are amenable to suit under section 1983 in their individual capacities. An individual named as a defendant in his personal capacity is amenable to suit as a "person." *Est. of Lagano v. Bergen Cty. Prosecutor's Off.*, 769 F.3d 850, 856 (3d Cir. 2014). It does not matter that the individual is a government

---

[7] *See Karns*, 879 F.3d at 519, n. 6 ("We emphasize that the Eleventh Amendment and § 1983 determinations are 'analytically distinct,' although sometimes overlapping) (quoting *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 857 (3d Cir. 2014)).

official, or that the acts for which they are being sued are official acts, because their amenability to suit flows solely from the personal capacity in which they are being sued. *Hafer v. Melo*, 502 U.S. 21, 27–28 (1991); *Lagano*, 769 F.3d at 856; *Richardson v. New Jersey*, No. 16-135, 2019 WL 6130870, at *5 (D.N.J. Nov. 18, 2019). Therefore, despite being state officials sued for their official acts, Officer Bernal and Sergeant Wells are amenable to suit under section 1983 because they are also being sued in their personal capacities. *See* Compl. at 2, ¶¶ 3–4; *Lagano*, 769 F.3d at 856; *Richardson*, 2019 WL 6130870, at *5.

### 3. *Prima Facie* Elements of a Malicious Prosecution Claim

Having concluded that Defendants Officer Bernal and Sergeant Wells are amenable to suit under section 1983 in their personal capacities, the Court must next determine whether the Complaint states a claim for malicious prosecution. To state a claim for malicious prosecution brought under section 1983, a plaintiff must allege that: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Kossler v. Crisanti*, 564 F.3d 181. 186 (3d Cir. 2009) (en banc) (internal quotation marks omitted). The first four elements listed above also comprise the New Jersey common law tort of malicious prosecution. *Allen v. N.J. State Police*, No. 16-1660, 2017 WL 5714707, at *6 (D.N.J. Nov. 28, 2017); *Wilson v. N.J. State Police*, No. 04–1523, 2006 WL 2358349, at *9 (D.N.J. Aug. 15, 2006). Here, Plaintiff's section 1983 and common law malicious prosecution claims must be dismissed because she has failed to meet the third element.[8]

---

[8] The State Defendants and Ayala do not appear to contest that the first two elements of a malicious prosecution claim are satisfied here, as Plaintiff has alleged that Officer Bernal, Sergeant Wells,

For the third element of both a section 1983 and common law action for malicious prosecution, a grand jury indictment constitutes *prima facie* evidence of probable cause. *Rose v. Bartle*, 871 F.2d 331, 352 (3d Cir. 1989). This presumption of probable cause can be overcome only if the plaintiff sufficiently alleges that the indictment was procured by "fraud, perjury or other corrupt means." *Id.*; *see Mobilio v. Dep't of L. & Pub. Safety of New Jersey,* No. 07-3945, 2008 WL 2704826 (D.N.J. July 7, 2008) (applying *Rose* standard to malicious prosecution claims under both § 1983 and New Jersey common law). In *Rose*, the Third Circuit affirmed a Rule 12(b)(6) dismissal of the plaintiff's section 1983 malicious prosecution claim, even though the plaintiff alleged that the defendants committed perjury in connection with the grand jury indictment, because he did not allege any specific instances of witnesses perjuring themselves or any substantive perjured testimony. *Id.* at 353–54. Therefore, under *Rose*, to overcome the presumption of probable cause at the motion to dismiss stage, a plaintiff must allege "specific instances of fraud, perjury, or corrupt means to procure the grand jury indictment." *Liberty Bell Temple III v. Trenton City Police Dep't*, No. 16-1339, 2019 WL 4750836, at *22 (D.N.J. Sept. 30, 2019) (dismissing plaintiff's malicious prosecution claim despite allegations that the purpose of his charges was to silence his voice and close his business because the allegations did not "rise to the level of plausibly asserting corruption or fraud in the grand jury presentment").[9]

Here, Plaintiff concedes that her indictment by a federal grand jury creates a presumption of probable cause. Opp. at 12–13. Although Plaintiff alleges improprieties with regard to the

---

and NJ Transit initiated a criminal proceeding against her and that the charges were subsequently dropped. *See* ECF No. 9-1 at 4; ECF No. 10-7 at 8–10.

[9] *See also Mobilio*, 2008 WL 2704826, at *5 (plaintiff's allegations that defendant police office "fabricated and suppressed evidence in order to obtain an arrest warrant and initiate a criminal proceeding against [the] [p]laintiff" were sufficient to overcome presumption of probable cause afforded by grand jury indictment).

investigation initiated against her (*see* Compl. at 4, ¶¶ 8, 11) and argues that the probable cause for arrest was based on allegedly flawed investigatory procedures (Opp. at 12–13), she does not allege any specific instances of fraud, perjury, or corruption in the grand jury presentment (*see generally* Compl.). Thus, Plaintiff has failed to rebut the *prima facie* presumption of probable cause established by the indictment and failed to satisfy the third element. *See Rose*, 871 F.2d at 352–54; *Liberty Bell Temple III*, 2019 WL 4750836, at *22; *Falat v. Cty. of Hunterdon*, No. A-2479-15T1, 2018 WL 3554139 (N.J. Super. Ct. App. Div. July 25, 2018) (affirming dismissal of common law malicious prosecution for failure to state a claim because plaintiff did not demonstrate a lack of probable cause sufficient to overcome the grand jury indictment)

Accordingly, Count I is dismissed as to Ayala, Bruno,[10] and the State Defendants. *See Liberty Bell Temple III*, 2019 WL 4750836, at *22; *Falat*, 2018 WL 3554139.[11]

---

[10] The Court sua sponte dismisses Count II as to Bruno because the allegations against him are substantially similar to the allegations against Ayala, dismissal involves the same legal theory, and Plaintiff has had the opportunity to address the deficiency of her pleading in her opposition to the motions to dismiss. *See Roman v. Jeffes*, 904 F.2d 192, 196 (3d Cir. 1990) (stating that "there are times when a court may sua sponte raise the issue of the deficiency of a pleading under 12(b)(6) provided that the litigant has had the opportunity to address the issue either orally or in writing"); *Seawright v. Greenberg*, No. 05-2751, 2005 WL 2877712, at *4 (E.D. Pa. Nov. 2, 2005), *aff'd,* 233 F. App'x 145 (3d Cir. 2007) (sua sponte dismissing complaint against "[a]ll [d]efendants who have failed to respond [to the complaint]" because the same legal theory applied to them as raised in other defendants' motion to dismiss); *Corporate Aviation Concepts, Inc. v. Multi-Service Aviation Corp.,* No. 03-3020, 2004 U.S. Dist. LEXIS 17154, at *2 n. 1 (E.D. Pa. Aug. 25, 2004) (sua sponte dismissing a counterclaim where a defendant counterclaimed against two plaintiffs, only one plaintiff moved to dismiss the counterclaim, and both counterclaims involved the same factual allegations, the same parties, and the same legal theories).

[11] As the Court finds a lack of probable cause here, it need not address Ayala's secondary argument that the malicious prosecution claim asserted against her must be dismissed because the fourth factor for a malicious prosecution is not satisfied. ECF No. 9-1 at 4; *see Lind v. Schmid*, 67 N.J. 255, 262 (1975) (the "essence of the [malicious prosecution] cause of action is lack of probable cause").

**b) Count II:  *Monell* Liability (asserted against the State Defendants)**

In Count II, Plaintiff asserts that the State Defendants are subject to *Monell* liability[12] under section 1983 because NJ Transit, through its police department, developed and maintained practices that were indifferent to the protection of constitutional rights, and which caused a violation of Plaintiff's constitutional rights. Compl. at 8, ¶ 2.  Specifically, Plaintiff alleges that NJ Transit "failed to adequately and properly supervise and train its employees in various aspects of law enforcement, criminal procedure and substance," and condoned the violation of civil rights. Id. at ¶¶ 3–4.

First, the Court dismisses Count II as to Officer Bernal and Sergeant Wells because only government entities are subject to *Monell* liability. *See Widmaier v. City of Newark*, No. 16-2533, 2019 WL 1895087, at *4 (D.N.J. Apr. 29, 2019) (dismissing with prejudice *Monell* claim against individual defendants because "*Monell* liability . . . pertains to government entities not individuals.") (citing *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).  Secondly, the Court dismisses Count II as to NJ Transit because, as explained *supra* Section III(a), it is entitled to sovereign immunity against section 1983 claims and is not amenable to suit under section 1983.

**c) Count III:  Violation of the New Jersey Civil Rights Act and the New Jersey Constitution (asserted against the State Defendants)**

In Count III, Plaintiff asserts a violation of the NJCRA and Article I, paragraphs 5 and 7 of the New Jersey Constitution. Compl. at 9.  She specifically alleges a deprivation of her substantive due process and equal protection rights based on the alleged malicious prosecution against her. Id. at ¶¶ 1–6.  The New Jersey Constitution, Article 1, ¶ 5 states in relevant part, "No

---

[12] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) governs the liability of municipalities under section 1983.

person shall be . . . discriminated against in the exercise of any civil or military right, . . . because of religious principles, race, color, ancestry or national origin." The New Jersey Constitution, Article 1, ¶ 7 states in relevant part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ." The NJCRA, in turn, provides a cause of action for violations of civil rights secured under federal and state law; it was modeled after, and is analogous to, section 1983. *Pettit v. New Jersey*, No. 09-3735, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011). Thus, courts often analyze the sufficiency of the NJCRA and New Jersey constitutional claims—particularly malicious prosecution claims brought under those provisions—through the same lens as a section 1983 claim. *See Coles v. Carlini*, 162 F. Supp. 3d 380, 404 (D.N.J. 2015); *Lucia v. Carroll*, No. 12-3787, 2014 WL 1767527, at *5 (D.N.J. May 2, 2014) (finding that the analysis for plaintiff's N.J. Const. art. I ¶ 7 malicious prosecution claim was the same as the section 1983 claims); *Chapman v. New Jersey,* No. 08-4130, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart").

Accordingly, because the Court has dismissed Plaintiff's malicious prosecution claim under section 1983, *see supra* Section III(a), the Court will dismiss Plaintiff's malicious prosecution claim under the NJCRA and N.J. Const. art. I ¶¶ 5, 7 for the same reasons. *See Carter v. Red Bank Borough*, No. 18-13537, 2019 WL 6699456, at *2 (D.N.J. Dec. 9, 2019) ("Even if Plaintiff brings his claim under the NJCRA, the Court reaches the same decision to dismiss Plaintiff's malicious prosecution claim [as] Courts in this district have construed and interpreted the NJCRA analogously to § 1983."); *Lucia v. Carroll,* No. 12–3787, 2014 WL 1767527, at *3–5 (D.N.J. May 2, 2014) (granting dismissal in defendant officer's favor on section 1983 malicious prosecution claim on the grounds that officer had probable cause to arrest and holding that because the analysis for plaintiff's corresponding claims under N.J. Const. art. I ¶ 7 and the NJCRA would

be the same, the officer was entitled to dismissal on those claims as well); *Monroe v. City of Hoboken,* No. 11–2556, 2012 WL 1191177, at *11 (D.N.J. Apr. 10, 2012) (noting that "the Court's analysis on the § 1983 claims applies to plaintiff's claims under the NJCRA" and dismissing plaintiff's malicious prosecution claims).[13]

**d) Count IV: New Jersey Law Against Discrimination (asserted against the State Defendants)**

In Count IV, Plaintiff asserts that the State Defendants violated the NJLAD, which prohibits discrimination in a place of public accommodation. Specifically, the NJLAD makes it unlawful "[f]or any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof . . . on account of the race . . . of such person . . ." N.J. Stat. Ann. § 10:5-12(f)(1). "To state a claim under the NJLAD for discrimination by a place of public accommodation, a Plaintiff must, (1) 'demonstrate that she is a member of a protected class'; (2) must 'show that the defendant's actions were motivated by discrimination'; and (3) must demonstrate that 'others not within the protected class did not suffer similar adverse . . . actions.'" *Florentino v. City of Newark*, No. 19-21055, 2020 WL 5105291, at *14 (D.N.J. Aug. 31, 2020)

---

[13] The State Defendants also argue that a claim for malicious prosecution under New Jersey law must be brought under common law, meaning it is not a violation of the NJCRA or the New Jersey Constitution. ECF No. 10-7 at 20–27. However, the State Defendants have cited only one state court case in support of this proposition, *Falat v. Cty. of Hunterdon*, which is not compelling because the plaintiffs therein conceded to dismissal of their NJCRA malicious prosecution claim. No. A-2479-15T1, 2018 N.J. Super. Unpub. LEXIS 1784, *17–*18 (N.J. Super. Ct. App. Div. Jul. 25, 2018). Furthermore, Sergeant Wells argues that, even if there were a violation of Plaintiff's constitutional rights, all section 1983 and NJCRA claims against him must be dismissed on the basis of qualified immunity. ECF No. 10-7 at 27–30. The Court need not reach this alternative argument because both the section 1983 and NJCRA claims are being dismissed for failure to state a claim. *See Jones v. Walsh*, No. 15-2629, 2018 WL 1203472, at *6 (D.N.J. Mar. 8, 2018) ("As all claims are being dismissed for failure to state a claim, the Court need not reach [the defendant]'s arguments regarding qualified immunity.").

(quoting *Partovi v. Felician Coll.*, No. A-1961-09T1, 2011 WL 867275, at *7–8 (N.J. Super. Ct. App. Div. Mar. 15, 2011)). Plaintiff has demonstrated that she is a member of a protected class by alleging that she is African-American. Compl. at 2, ¶ 1. However, she has failed to satisfy the second and third elements.

To meet the second element, Plaintiff must allege facts sufficient to create an inference that the State Defendants' actions were motivated by racial discrimination. *See Leanne Wright-Phillips*, 2021 WL 1221111, at *12 (Black plaintiff's allegations that defendant flight attendant refused to provide routine medical care to him despite caring for a white passenger, created a hostile environment on-board, and held animus against Plaintiff, sufficed to meet the third element because a "reader of the [] [c]omplaint could plausibly infer that this refusal [to provide medical care] was racially motivated"). Conclusory allegations of discrimination are insufficient. *Florentino v. City of Newark*, 2020 WL 5105291, at *14 (plaintiff's allegations that she was unlawfully arrested because of her protected status and that the defendant officers taunted her with political comments were "too conclusory to sustain a claim for discrimination"); *Partovi v. Felician Coll.*, No. A-1961-09T1, 2011 WL 867275, at *7–8 (N.J. Super. Ct. App. Div. Mar. 15, 2011).

Here, Plaintiff makes only one conclusory allegation of discrimination—that the State Defendants arrested her "without any basis for probable cause and then maliciously prosecut[ed] her, due solely to her race or national origin." Compl. at 10, ¶ 4. However, Plaintiff does not allege any facts to support her assertion that Officer Wells, Sergeant Bernal, or any other NJ Transit police officer, investigated or prosecuted Plaintiff based on her race or national origin. Rather, Plaintiff alleges that Officer Wells and Sergeant Bernal initiated their investigation based on the allegedly false reports provided by Ayala and Bruno, which indicated that Plaintiff had hit Ayala's vehicle, threatened Ayala with a handgun, and then fled the scene. Compl. at 4, ¶¶ 4–7. Moreover,

in her opposition, Plaintiff does not address the State Defendants' argument that her sole conclusory allegation of discrimination is insufficient to survive Rule 12(b)(6). *See* Opp. Therefore, Plaintiff has failed to satisfy the second element. *See Florentino*, 2020 WL 5105291, at *14.

Plaintiff has also failed to meet the third element, as she has not alleged sufficient facts to indicate that others outside of her protected class received different treatment. Accordingly, Plaintiff's NJLAD claim for discrimination by a place of public accommodation (Count IV) is dismissed as to the State Defendants. *See Florentino v. City of Newark*, 2020 WL 5105291, at *14; *Partovi*, 2011 WL 867275, at *8 (affirming dismissal of plaintiffs' NJLAD claim, in part because they "did not allege any facts that indicate that [an individual plaintiff] was treated differently than other students based on her national origin or any other protected characteristic.").

### e) Count V: Abuse of Process (asserted against Ayala and Bruno)

In Count V, Plaintiff alleges that Ayala and Bruno improperly abused the legal process "for an ulterior motive not contemplated by law." Compl. at 10, ¶ 3. Because Plaintiff does not provide any citations to federal law and does not dispute Ayala's classification of the claim as being brought under common law, the Court construes her abuse of process claim under New Jersey common law. *See* No. 9-1 at 7–8 (State Defendants argue that Plaintiff's claim for malicious abuse of process should be dismissed as a common law claim); Opp. at 18 (Plaintiff argues that various causes of action, including Count V, survive dismissal because they are sufficiently pleaded, without contesting the State Defendants' classification of said claim).

Common law malicious abuse of process claims seek to hold a defendant liable for "the improper, unwarranted, and perverted use of process after it has been issued . . ." *Ash v. Cohn*, 194 A. 174, 176 (N.J. 1937). "A successful malicious abuse of process claim requires a [p]laintiff to demonstrate '(1) that defendants made an improper, illegal, and perverted use of the process, i.e.,

a use neither warranted nor authorized by the process; and (2) that in use of such a process there existed an ulterior motive.'" *Cluver v. Borough of Sayreville*, No. 10-3173, 2013 WL 394030, at *8 (D.N.J. Jan. 30, 2013), *aff'd,* 557 F. App'x 180 (3d Cir. 2014) (quoting *Ash*, 194 A. 176). Special concern is directed to whether the defendant engaged in acts following the issuance of process, which indicate the existence of an ulterior motive. *Cluver*, 2013 WL 394030, at *8; *Melillo v. Elizabeth Bd. of Educ.*, No. 11-4887, 2012 WL 6725837, at *7 (D.N.J. Dec. 27, 2012); *see Hoffman v. Asseenontv.Com, Inc.*, 404 N.J. Super. 415, 431–32 (App. Div. 2009) (noting that a court's "focus must not be on what prompted the suit but what action [the alleged wrongdoer] engaged in after commencement of the action").[14]  In the context of a criminal prosecution, the issuance of process is the arrest of the plaintiff-victim. *See Cluver*, 2013 WL 394030, at *8.

Here, Plaintiff has failed to state a claim for common law abuse of process.  While Plaintiff makes the conclusory allegation that Ayala and Bruno acted with an ulterior motive, she neither explains what the ulterior motive was nor alleges any specific instances following Plaintiff's arrest that could lead the Court to infer that Ayala or Bruno acted with an ulterior motive.[15]  *See Morisseau v. Borough of N. Arlington,* No. 16-837, 2018 WL 1522731, at *17 (D.N.J. Mar. 28, 2018) (dismissing malicious prosecution claim because plaintiff's only allegations of wrongdoing

---

[14] For example, in *Cluver*, the court dismissed the malicious abuse of prosecution claim against the defendant detective at summary judgment because the only allegation concerning post-arrest conduct was that the detective engaged in an improper line of questioning, but there was nothing in the interrogation transcript "to indicate that [the d]etective [] maliciously abused process or was motivated by an ulterior motive during his interrogation." 2013 WL 394030, at *8.

[15] By contrast, in *Melilo v. Elizabeth Board of Education*, the plaintiff's malicious prosecution claim survived dismissal because:  (1) plaintiff alleged that the defendant employer's coercive ulterior motives were to make the plaintiff's underlying litigation more expensive and to prevent his employment; and (2) plaintiff specifically alleged that, after the issuance of process, defendants engaged in five, distinct acts—including protracting the litigation against him, blocking his admission into criminal pre-trial intervention, attempting to undo his expungement, and filing a complaint with the Division of Youth and Family Services despite his expungement—that supported these ulterior motives. 2012 WL 6725837, at *7.

after the issuance of process constituted legitimate efforts to enforce a legal eviction). Plaintiff's sole allegation of specific conduct by Ayala and Bruno following Plaintiff's arrest is that they testified at a *Wade* hearing on behalf of the State on March 1, 2017. Compl. at 6, ¶ 22. However, Plaintiff does not allege that Ayala or Bruno lied during their testimony, or otherwise acted in a way suggestive of ulterior motive. *See* id. Ayala and Bruno's participation as witnesses in a criminal proceeding is not itself indicative of any ulterior motive, and is insufficient to support an abuse of process claim. *Cluver*, 2013 WL 394030, at *8. Therefore, Plaintiff has failed to allege an abuse of process claim against Ayala or Bruno,[16] and Count V is dismissed. *See Pierre v. Treasury Dep't*, No. 18-3443, 2018 WL 5801549, at *9 (D.N.J. Nov. 5, 2018) (dismissing abuse of process claim because the plaintiff did "not set forth any facts showing that the . . . [d]efendants *intentionally* withheld information or elicited evidence that they knew to be false") (emphasis added); *Morisseau*, 2018 WL 1522731, at *17.

### f) Count VI: Negligent and Intentional Infliction of Emotional Distress (asserted against all Defendants)

In Count VI, Plaintiff asserts a negligent and intentional infliction of emotional distress claim against the State Defendants, Ayala, and Bruno, based on the allegedly unlawful charging and malicious prosecution of Plaintiff. Compl. at 11, ¶ 2. Count VI is dismissed as to the State Defendants because Plaintiff has failed to file a notice of tort claim, and it is dismissed as to Ayala and Bruno because Plaintiff has not asserted sufficiently severe injury or distress as a result of their actions.

To assert a cause of action in tort against a public entity or its employees, a plaintiff must submit a notice of claim to the public entity within ninety days of the claim's accrual; otherwise the claim is time-barred. *Velez v. City of Jersey City*, 180 N.J. 284, 290 (2004) (citing N.J.S.A. §

---

[16] The Court sua sponte dismisses Count V as to Bruno for the reasons stated *supra* n. 10.

59:8-8(a)).[17]   Plaintiff concedes that she has failed to file a notice of tort claim and that her negligent infliction of emotional distress claim against the State Defendants should be dismissed on this basis. ECF No. 36 at 1–3.   Thus, the Court dismisses the negligent infliction of emotional distress claim as to the State Defendants.

Plaintiff argues against the dismissal of her intentional infliction of emotional distress claim by incorrectly asserting that, under N.J.S.A. § 59:3-14, intentional torts are excluded from the NJTCA's notice requirement.[18] ECF No. 37 at 3.   In *Velez*, the New Jersey Supreme Court explicitly held that, despite N.J.S.A. § 59:3-14, the NJTCA's notice requirements apply to intentional torts. 180 N.J. at 294 (2004) (finding that N.J.S.A 59:3-14 "must be read together with the overall mandate of N.J.S.A. 59:8-3, that '[n]o action shall be brought against a public entity or public employee under this [A]ct unless the claim [is] . . . presented in accordance with the procedure set forth in this [Act].").   Therefore, Plaintiff is still required to comply with the notice requirements of the NJTCA when asserting an intentional infliction of emotional distress claim against a state entity or public employee. *See Gillespie v. Janey*, No. 09-885, 2010 WL 777954, at *5 (D.N.J. Mar. 5, 2010), *aff'd*, 441 Fed. App'x 890 (3d Cir. 2011) ("A plaintiff seeking to file a common law intentional tort action against a public entity or public employee must submit a notice of claim to the public entity within ninety days of accrual of the claim."); *Van v. Borough of N. Haledon*, No. 05-5595, 2009 WL 1811727, at *13 (D.N.J. June 22, 2009) ("Pursuant to *Velez*,

---

[17] NJTCA § 59:8-8(a) specifically states that "[a] claim relating to a cause of action for death or for injury or damage to person or property shall be presented as provided in this chapter not later than the 90th day after accrual of the cause of action. . . . The claimant shall be forever barred from recovering against a public entity or public employee if:  (a) The claimant failed to file the claim with the public entity within 90 days of accrual of the claim."

[18] § 59:3-14 states:  "[n]othing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct."

however, the [NJ]TCA notice provisions apply both to negligent and intentional conduct, including

actions allegedly outside the scope of employment."). Accordingly, because Plaintiff has failed to

comply with § 59:8-8(a)'s notice requirement, the intentional infliction of emotional distress claim

against the State Defendants is also dismissed. *See Velez v. Fuentes*, No. 15-6939, 2016 WL

4107689, at *6 (D.N.J. July 29, 2016) (dismissing tort claims against public entity with prejudice,

including intentional infliction of emotional distress claim, for failure to comply with § 59:8-8(a)).

With regard to the intentional infliction of emotional distress claim against Ayala and

Bruno, Plaintiff's claim fails for a different reason. "To establish a claim for intentional infliction

of emotional distress, a plaintiff is required to establish: (1) that the defendants acted intentionally

or recklessly, both in doing the act and in producing emotional distress; (2) that the defendants'

conduct was so outrageous in character and extreme in degree as to go beyond all bounds of

decency; (3) that the defendants' action were the proximate cause of the emotional distress; and

(4) that the emotional distress suffered was so severe that no reasonable person could be expected

to endure it." *Mardini v. Viking Freight, Inc.*, 92 F. Supp. 2d 378, 384 (D.N.J. 1999) (citing *Buckley

v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (1988)). Under New Jersey Law, to satisfy the

fourth element, in addition to alleging severe distress, plaintiffs must assert that they suffered from

a specific ailment and sought treatment for it. *Botts v. The New York Times Co.*, No. 03-1582, 2003

WL 23162315, at *9 (D.N.J. Aug. 29, 2003) (collecting cases) (granting 12(b)(6) motion to dismiss

because plaintiffs did "not allege[] that they have sought medical treatment for their distress").[19]

---

[19] *Compare Mardini*, 92 F. Supp. 2d at 385 (granting 12(b)(6) motion to dismiss intentional infliction of emotional distress claim, noting that the plaintiff had "not alleged that she had to seek medical assistance, or that any specific ailment afflicted her"); *Harris v. Middlesex County Coll.*, 353 N.J. Super. 31, 45–46 (App. Div. 2002) (affirming dismissal of intentional infliction of emotional distress claim where plaintiff did not allege need for psychiatric counseling); *Aly v. Garcia*, 333 N.J. Super. 195, 204–05 (App. Div. 2000) (intentional infliction of emotional distress claim should be dismissed where no evidence that plaintiffs sought medical treatment for alleged distress) *with Maxon v. YRC Inc.*, No. 14–4653, 2015 WL 4394272, at *6–7 (D.N.J. July 6, 2015)

Here, Plaintiff alleges that she suffered "emotional distress and anxiety" as a result of the alleged malicious prosecution against her, but she has not alleged that she sought any medical treatment. *See* Compl. at 6, ¶ 26. Therefore, Plaintiff's intentional infliction of emotional distress claim against Ayala and Bruno is dismissed. *See Botts*, 2003 WL 23162315, at *9; *Aly*, 333 N.J. Super. at 204–05.

Next, regarding Plaintiff's negligent infliction of emotional distress claim, the applicable standard is as follows:

> Under New Jersey law, there are two legal theories under which a plaintiff can establish a *prima facie* claim for negligent infliction of emotional distress. First, a plaintiff can show: 1) "death or serious physical injury of another caused by defendant's negligence; 2) a marital or intimate family relationship between plaintiff and the injured person; 3) observation of the death or injury at the scene of the accident; and 4) resulting severe emotional distress." *Fleming v. United Parcel Serv., Inc.*, 255 N.J. Super. 108, 166 (Law. Div. 1992). Second, a plaintiff can show "the defendant's negligent conduct placed the plaintiff in 'reasonable fear of immediate personal injury' which gave rise to emotional distress that resulted in a substantial bodily injury or sickness." *Jablonowska v. Suther*, 195 N.J. 91, 103 (2008).

*Van Tassel v. Ocean Cty.*, No. 16-4761, 2017 WL 5565208, at *9 (D.N.J. Nov. 17, 2017). Plaintiff fails under the first theory because there is no indication that Ayala or Bruno caused the death or serious physical injury of another. *See id.*; *Fleming*, 255 N.J. Super. at 166; Compl. Plaintiff fails under the second theory because there is no indication that she was placed in fear of immediate personal injury. *See Van Tassel*, 2017 WL 5565208, at *9; *Jablonowska*, 195 N.J. at 103. Therefore, Plaintiff has failed to state a claim for negligent infliction of emotional distress against Ayala or Bruno, and the claim will be dismissed. *See Van Tassel*, 2017 WL 5565208, at *9.

---

(denying 12(b)(6) motion to dismiss, noting the plaintiff alleged suffering from stress, anxiety, recurring nightmares, had a heart attack, and underwent psychological counseling); *Flammer v. Cty. of Morris*, No. 05–5039, 2006 WL 1307679, at *4 (D.N.J. May 10, 2006) (denying 12(b)(6) motion to dismiss, noting the plaintiff alleged "that [the defendant's] conduct caused him to seek medical attention and resulted in him being prescribed medication for anxiety").

Accordingly, Count VI is dismissed as to the State Defendants, Ayala and Bruno.[20]

### g) Count VII:  Punitive Damages (asserted against Officer Bernal, Sergeant Wells, Ayala, and Bruno)

In Count VII (Compl. at 11), Plaintiff attempts to assert a standalone cause of action for punitive damages under the Punitive Damages Act, N.J.S.A. § 2A:15-5.98.  However, "[p]unitive damages are a remedy incidental to [a] cause of action, not a substantive cause of action in and of themselves." *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 372 (D.N.J. 2000); *see also* N.J. Stat. Ann. § 2A:15–5.13(c) (providing that punitive damages may be awarded under New Jersey law only if compensatory damages have been awarded).  Accordingly, the Court dismisses Count VII for punitive damages because Plaintiff improperly asserts her request for punitive damages as a separate cause of action. *See Onyejekwe v. Uber Techs., Inc.*, No. 19-10196, 2020 WL 2832566, at *3 (D.N.J. June 1, 2020) (dismissing standalone claim for punitive damages without prejudice because it is not cognizable); *Smith v. Covidien LP*, No. 19-11981, 2019 WL 7374793, at *10 (D.N.J. Dec. 31, 2019) (dismissing punitive damages claim because a standalone cause of action for punitive damages is not cognizable, and disregarding the defendant's argument that plaintiff insufficiently pled conduct to warrant such damages).

## IV.  Conclusion

For the foregoing reasons, Ayala's (ECF No. 9) and the State Defendants' motions to dismiss (ECF No. 10) are granted, and the Complaint (ECF No. 1-2) is dismissed.  To the extent that Plaintiff can cure any of the pleading deficiencies discussed herein, she may file an amended complaint within thirty (30) days of the date of this Opinion.

An appropriate Order follows this Opinion.

---

[20] The Court sua sponte dismisses Count VI as to Bruno for the reasons stated *supra* n. 10.

**Date:** April 28, 2021

_____

**HON. CLAIRE C. CECCHI, U.S.D.J.**