NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARMAINE PHILLIPS,<br><br>        Plaintiff,<br><br>v.<br><br>NEW JERSEY TRANSIT, *et al.*<br><br>        Defendants. | Civil Action No.: 19-13427<br><br>**OPINION** |

**CECCHI, District Judge.**

This matter comes before the Court on two motions to dismiss Plaintiff Charmaine Phillips' ("Plaintiff") First Amended Complaint (ECF No. 46 ("FAC")): (1) Defendants New Jersey Transit Corporation ("NJ Transit"), Sarah Bernal ("Officer Bernal"), and Dennis Wells' ("Sergeant Wells") (collectively, the "State Defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 51); and (2) *pro se* Defendant Carlos Bruno's ("Bruno") motion to dismiss (ECF No. 53).[1] Plaintiff has opposed the motions (ECF No. 57 ("Opp.")) and the State Defendants filed a reply (ECF No. 60). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Bruno's motion to dismiss is **DENIED**, and the State Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Upon a stipulation from the parties, on July 1, 2022, the Court extended the time for Defendant Alexy Ayala ("Ayala") to respond to the First Amended Complaint "up to and through July 26, 2021." ECF No. 52. To date, Ayala has not filed a motion to dismiss the First Amended Complaint or otherwise responded to the First Amended Complaint, and she has not sought any additional extensions.

## I.  BACKGROUND

This case arises out of the filing of an allegedly false report by Defendant Ayala and her stepson, Defendant Bruno, to Defendant NJ Transit's Police Department regarding a vehicular incident at or near Newark Penn Station. After receiving the allegedly false report, Defendant Officer Bernal initiated an investigation into the matter, which led to the arrest of Plaintiff. Plaintiff asserts that the NJ Transit Police Department's investigatory procedures were flawed and corrupt, particularly those concerning her identification by Ayala as the culprit of the crime. Plaintiff was charged with four crimes in state court and spent forty-four days in jail before she was released on her own recognizance. Plaintiff was then indicted for the crimes. Before trial, Plaintiff succeeded on a motion to suppress out-of-court and in-court identifications, and the prosecutor subsequently dropped all charges against her.

In the instant action, Plaintiff contends that she was maliciously prosecuted and discriminated against. Her initial complaint was dismissed by this Court because *inter alia* NJ Transit was entitled to sovereign immunity, she failed to allege a lack of probable cause as required to support a malicious prosecution claim, and there were insufficient allegations to support a discrimination claim. Since then, Plaintiff has amended her complaint to include additional allegations of fraud, perjury, and corruption, which, in combination with her other allegations, indicate a lack of probable cause for her arrest. Plaintiff has also agreed to dismiss her discrimination claim and all claims against NJ Transit. Plaintiff's remaining claims are discussed below.

### a) Procedural Background

Plaintiff initiated this action on June 5, 2019 against the State Defendants, Ayala, and Bruno. ECF No. 1-2. Her initial complaint asserted seven causes of action: malicious prosecution (Count I); *Monell* liability (Count II); violations of the New Jersey Civil Rights Act (the

"NJCRA"), N.J.S.A. § 10:6-1, *et seq.* and the New Jersey State Constitution, Article I, ¶¶ 5 & 7 (Count III); violations of New Jersey's Law Against Discrimination (the "NJLAD"), N.J.S.A. § 10:5-1, *et seq.* (Count IV); abuse of process (Count V); intentional and/or negligent infliction of emotional distress (Count VI); and damages under New Jersey's Punitive Damages Act, N.J.S.A. § 2A:15-5.9, *et seq.* (Count VII). Id.[2]

Ayala and the State Defendants subsequently moved to dismiss the initial complaint. ECF Nos. 9, 10. On August 27, 2020, the Court entered an Order to Show Cause directing Plaintiff to "show cause as to why Counts I–II and VI–VII of the Complaint should not be dismissed as to the State Defendants for failure to file a notice of tort claim." ECF No. 36. In response, Plaintiff conceded that Count VI should be dismissed as to the State Defendants but argued that the other Counts may proceed against them despite a failure to provide notice. Id. at 1–3.

On April 28, 2021, this Court granted Ayala's and the State Defendants' motions to dismiss the initial complaint. ECF Nos. 44, 45. The Court dismissed the entirety of the complaint without prejudice because the State Defendants were entitled to sovereign immunity from certain claims and Plaintiff's other claims suffered from pleading deficiencies. ECF No. 44. The Court granted Plaintiff an opportunity to file an amended pleading. Id. On May 26, 2021, Plaintiff filed the instant First Amended Complaint, asserting five causes of action: malicious prosecution against Ayala, Bruno, Officer Bernal, and Sergeant Wells (Count I); *Monell* liability against NJ Transit (Count II); violations of the NJCRA and the New Jersey State Constitution by Bernal and Wells (Count III); (4) violations of the NJLAD by Bernal and Wells (Count IV); and (5) abuse of process against Ayala and Bruno (Count V). ECF No. 46.

---

[2] A partial stipulation of dismissal between the parties, entered on May 1, 2020, limited each Count to certain defendants. ECF No. 30.

On June 30, 2021, the State Defendants moved to dismiss all claims asserted against them in the First Amended Complaint, arguing that Plaintiff failed to correct the pleading deficiencies identified in this Court's prior Opinion. ECF No. 51.  On July 14, 2021, Bruno filed a one-page notice of a motion to dismiss; however, he does not explain why the claims against him should be dismissed. *See* ECF No. 53 at 1.  Instead, Bruno attaches a document titled "Constructive Notice of Conditional Acceptance," which states that he received a copy of the complaint and "conditionally accept[s]" an "offer to contract upon proof of claim that [Bruno] owe[s] any alleged amount or obligation." Id. at 2.[3]  Bruno also requests information regarding contractual liability between himself and the parties involved, and attaches a copy of a postal money order for $1.00. Id. at 3–7.  Plaintiff filed an opposition to the State Defendants' and Bruno's motion on August 24, 2021, agreeing to drop certain claims but arguing that her other claims are sufficiently pleaded. Opp.  The State Defendants filed a reply in further support of their motion on September 13, 2021. ECF No. 60.

**b)  Factual Background**

The factual background of this case, as provided in Plaintiff's initial complaint, is summarized in this Court's prior Opinion:

> On July 27, 2015, Plaintiff and her non-party husband were departing Newark Penn Station when Ayala walked up to their vehicle and accused them of striking her automobile. Id. at 3, ¶ 3.  Plaintiff alleges that "[a]t no time did their vehicle make any contact with any other vehicle at or near Newark Penn Station." Id.  Plaintiff and her husband then drove home. Id.
>
> Thereafter, Ayala and her stepson Bruno appeared at the NJ Transit Police Department and reported that "[P]laintiff's vehicle had struck [Ayala's] vehicle and left the scene and also that [] [P]laintiff pointed a handgun at [Ayala] and threatened to shoot her." Id. at 4, ¶¶ 4, 6.  Ayala provided photographs that she had taken of Plaintiff's vehicle and the license plate to Defendant Officer Bernal (a police officer employed by Defendant NJ Transit) and Officer Bernal's supervisor, Sergeant Wells. Id. at ¶ 5.  She also provided a written statement to Officer Bernal. Id. at ¶ 7.  Officer Bernal ran the license plate number of the

---

[3] It is unclear what purported "offer" Bruno is referencing. *See* id.

4

> vehicle, which Ayala had provided, and showed Ayala Plaintiff's driver's license photo before Ayala had identified Plaintiff as the perpetrator. Id. at ¶ 8. Based on this information, unnamed members of the NJ Transit Police Department went to Plaintiff's home and arrested her and her husband without a warrant. Id. at ¶ 9. Plaintiff maintained her innocence and no weapon was ever recovered. Id. at 3, ¶ 3; id. at 5, ¶ 15.
>
> Following the arrest, Officer Bernal brought Ayala to the scene to make an identification. Id. at 4, ¶ 10. Plaintiff asserts that Bernal did not follow the proper protocol for an identification by, for example, bringing out her and her husband in handcuffs. Id. at ¶ 11. At the scene, Ayala identified Plaintiff as the person who had pointed a gun at her. Id. at 5, ¶ 12. On July 27, 2015, Plaintiff was charged with aggravated assault, possession of a handgun used to threaten another, possession of a handgun without a permit and obstruction of justice. Id. at ¶ 17. She was transferred to the Essex County Jail the next day. Id. at ¶ 18. Initially, Plaintiff was unable to post bail and she remained incarcerated at the Essex County Jail for forty-four days. Id. at ¶ 19. Bail was subsequently reduced upon motion by Plaintiff. Id. at ¶ 20.
>
> After bail was reduced, Plaintiff was released on her own recognizance on September 19, 2015 and was prosecuted for the next eighteen months. Id. at ¶¶ 20–21. On October 22, 2015, a grand jury indicted Plaintiff on four counts: fourth degree aggravated assault, second degree unlawful possession of a weapon, second-degree possession of a weapon for an unlawful purpose, and fourth degree obstruction of the administration of law. ECF No. 10-4. Plaintiff subsequently filed a motion to suppress an out-of-court and in-court identification. Compl. at 6, ¶ 22. On March 1, 2017, a *Wade* hearing on the motion to suppress was conducted, during which Bernal and Ayala testified on behalf of the State. Id. Plaintiff's motion to suppress was granted on March 6, 2017. Id. at ¶ 23. The Complaint alleges that the state court found that: NJ Transit Police procedures were flawed, Bernal's testimony was not credible, the show-up identification was impermissibly suggestive, the officers failed to properly record the identification, and the victim had limited opportunity to observe the perpetrators. Id. at ¶ 23. On March 10, 2017, all charges against the Plaintiff were dismissed by motion of the prosecutor. Id. at ¶ 24.
>
> Plaintiff alleges that, as a result of the Defendants' actions, in addition to being unjustly detained, she suffered "emotional distress and anxiety; the loss of her employment and other economic harm; and the temporary loss of custody of her sons." Id. at ¶ 26."

ECF No. 80. In addition to the allegations described above, Plaintiff now alleges, in the First Amended Complaint, that: Ayala and Bruno held an ulterior motive to incarcerate Plaintiff for "an alleged minor motor vehicle accident" (id. at 13, ¶ 5); Officer Bernal assisted Ayala in writing a fraudulent statement reiterating her false claims (id. at 4, ¶ 7); Officer Bernal and Ayala committed perjury in the course of the grand jury presentment (id. at 7, ¶ 26); and all Defendants

5

"conspired to create a fraudulent incident report that was used in the prosecution and indictment" of Plaintiff (id. at ¶ 25).

## II. LEGAL STANDARD

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions . . . will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis: "First, the factual and legal elements of a claim should be separated . . . . Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citations omitted).[4]

---

[4] When assessing a motion to dismiss under Rule 12(b)(6), this Court is limited to considering the allegations in the complaint, exhibits attached to the complaint, matters of public record, and indisputably authentic documents on which a plaintiff's claims are based. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

6

**III.    DISCUSSION**

As a preliminary matter, the Court will dismiss certain claims pursuant to Plaintiff's concession. In their motion to dismiss, the State Defendants argue that all claims against NJ Transit and all claims against Officer Bernal and Sergeant Wells in their official capacities should be dismissed because nothing has changed respecting the prior dismissal of those claims. ECF No. 51-2 ("Mot.") at 23. The State Defendants also argue that the NJLAD claim under Count IV must be dismissed because there have been no additional facts alleged to support a finding that Defendants were motivated by racial animus. Id. at 19–20. Plaintiff does not oppose the dismissal of those claims. *See* Opp. at 15 ("[P]laintiff does not oppose the motion to dismiss the civil rights claims against defendant New Jersey Transit nor the NJLAD claims. Plaintiff also does not oppose the dismissal of the official capacity claims against New Jersey Transit police officers Bernal and Wells."). Therefore, the following claims are dismissed: Count II (the only claim asserted against NJ Transit), Count IV (the NJLAD claim), and all claims asserted against Officer Bernal and Sergeant Wells in their official capacity.

Plaintiff argues that the claims against Officer Bernal and Sergeant Wells can nevertheless proceed because they are being sued in their individual or personal capacities. Opp. at 15. Indeed, this Court previously held that section 1983 claims may proceed against Bernal and Wells in their individual or personal capacities, so long as they are properly pleaded. ECF No. 44 at 12 ("It does not matter that the individual is a government official, or that the acts for which they are being sued are official acts, because their amenability to suit flows solely from the personal capacity in which they are being sued. Therefore, despite being state officials sued for their official acts, Officer Bernal and Sergeant Wells are amenable to suit under section 1983 because they are also being sued in their personal capacities.") (citing *Hafer v. Melo*, 502 U.S. 21, 27–28 (1991); *Est. of Lagano v. Bergen Cty. Prosecutor's Off.*, 769 F.3d 850, 856 (3d Cir. 2014); and *Richardson v.*

7

*New Jersey*, No. 16-135, 2019 WL 6130870, at *5 (D.N.J. Nov. 18, 2019)).  In their reply, the State Defendants do not appear to dispute that Officer Bernal and Sergeant Wells are amenable to suit. *See* ECF No. 60.  They only argue that probable cause existed here for Plaintiff's arrest and that the officers are entitled to qualified immunity. Id.

Therefore, next, the Court will consider whether Plaintiff has sufficiently pleaded:  (1) a malicious prosecution claim against Ayala, Bruno, Bernal and Wells under Count I, taking into consideration any qualified immunity arguments by Bernal and Wells; (2) a violation of the NJCRA by Bernal and Wells under Count III; and (3) an abuse of process claim against Ayala and Bruno under Count V.

### a) Count I:  Malicious Prosecution (asserted against Ayala, Bruno, Officer Bernal and Sergeant Wells)

In Count I of the Complaint, Plaintiff alleges that Ayala, Bruno, Officer Bernal, and Sergeant Wells maliciously initiated a criminal prosecution against her even though she "had not committed any infraction to legally justify her arrest nor did there exist sufficient facts for a finding of probable cause." FAC at 8, ¶¶ 2–9.  To state a claim for malicious prosecution brought under section 1983, a plaintiff must allege that:  "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Kossler v. Crisanti*, 564 F.3d 181. 186 (3d Cir. 2009) (en banc) (internal quotation marks omitted).  The first four elements listed above also comprise the New Jersey common law tort of malicious prosecution. *Allen v. N.J. State Police*, No. 16-1660, 2017 WL 5714707, at *6 (D.N.J. Nov. 28, 2017); *Wilson v. N.J. State Police*, No. 04–1523, 2006 WL 2358349, at *9 (D.N.J. Aug. 15, 2006).  As noted above, neither Ayala nor

Bruno have argued for a dismissal of the First Amended Complaint's malicious prosecution claim. Officer Bernal and Sergeant Wells argue that the claim against them must be dismissed because Plaintiff has failed to sufficiently allege a lack of probable cause under the third element.

Bernal and Wells do not appear to dispute that the other four elements are sufficiently pleaded here. *See* ECF Nos. 51, 60. First, Plaintiff alleges that the officers, Ayala, and Bruno initiated a criminal prosecution against her. FAC at 8, ¶ 3. Second, she alleges that the proceeding ended in her favor because all charges against her were dropped. Id. ¶ 4. Fourth, she alleges that her prosecution "was done with malice." Id. at 9, ¶ 5. And fifth, Plaintiff allegedly suffered a loss of liberty by being detained for forty-four days and temporarily losing custody of her kids. Id. at 8, ¶ 32.

With respect to the third element, Plaintiff alleges that she "had not committed any infraction to legally justify her arrest nor did there exist sufficient facts for a finding of probable cause." Id. at ¶ 2. However, here, Plaintiff's grand jury indictment constitutes *prima facie* evidence of probable cause. *Rose v. Bartle*, 871 F.2d 331, 352 (3d Cir. 1989). This presumption of probable cause can be overcome only if Plaintiff sufficiently alleges that the indictment was procured by "fraud, perjury or other corrupt means." *Id.*; *see Mobilio v. Dep't of L. & Pub. Safety of New Jersey*, No. 07-3945, 2008 WL 2704826 (D.N.J. July 7, 2008) (applying *Rose* standard to malicious prosecution claims under both § 1983 and New Jersey common law). To overcome the presumption of probable cause at the motion to dismiss stage, a plaintiff must allege "specific instances of fraud, perjury, or corrupt means to procure the grand jury indictment." *Liberty Bell Temple III v. Trenton City Police Dep't*, No. 16-1339, 2019 WL 4750836, at *22 (D.N.J. Sept. 30, 2019); *see Rose*, 871 F.2d at 353–54 (affirming a Rule 12(b)(6) dismissal of plaintiff's section 1983 malicious prosecution claim because he did not allege any specific instances of witnesses perjuring themselves or any substantive perjured testimony).

9

In its prior Opinion, the Court dismissed Plaintiff's malicious prosecution claim because she did not allege any specific instances of fraud, perjury, or corruption in the grand jury presentment. *See* ECF No. 44 at 13–14.  Since then, Plaintiff has amended her complaint to include the requisite allegations.  Specifically, she now alleges that Bernal and Ayala committed perjury in the course of the grand jury presentment by "reiterating the false story of the [P]laintiff pointing a handgun at Ayala." FAC at 7, ¶ 26.  She further alleges that all Defendants "conspired to create a fraudulent incident report that was used in the prosecution and indictment by lying and claiming that [P]laintiff had brandished a handgun and pointed it at Ayala." Id. at ¶ 25.  Plaintiff's allegations of perjury and falsification of evidence do "rise to the level of plausibly asserting corruption or fraud in the grand jury presentment." *Liberty Bell Temple*, 2019 WL 4750836, at *22; *see Mobilio*, 2008 WL 2704826, at *5 (plaintiff's allegations that defendant police office "fabricated and suppressed evidence in order to obtain an arrest warrant and initiate a criminal proceeding against [the] [p]laintiff" were sufficient to overcome presumption of probable cause afforded by grand jury indictment).

Additionally, Plaintiff alleges that she was falsely identified as the assailant of the crime at issue because Officer Bernal "intentionally" showed Ayala a photograph of Plaintiff in the course of his investigation (FAC at 5, ¶ 8) and because the police implemented an "inappropriate and illegal show up identification procedure" (id. at ¶ 12).[5]  She also alleges that the police never

---

[5] In the underlying criminal proceeding, Plaintiff's motion to suppress her out-of-court identification was granted, at least in part, because the judge therein found that the police identification procedures "were either not properly followed, or were tainted, and taken [] in their aggregate . . . the identification was impermissibly suggestive." ECF No. 57-2 21:15–19; *see* id. at 24:4–9 ("So for all those reasons I am going to grant the Motion to Suppress the out of Court identification of both defendants by the victim. And because I find that the procedure was impermissibly suggestive, and that the identifications are not reliable, I'm going to bar any in Court identification.").  This finding does not independently refute a determination of probable cause, but taken in combination with the other allegations discussed, it indicates that probable cause was lacking here for Plaintiff's arrest.

found the weapon at issue or "any evidence to corroborate that the plaintiff had a weapon in her possession." Id. at 7, ¶¶ 23, 24. Assessing the totality of the circumstances and resolving all inferences in Plaintiff's favor, the Court finds that Plaintiff has sufficiently alleged a lack of probable cause at this stage. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995) ("Generally, the existence of probable cause is a factual issue."). Therefore, as Plaintiff has rebutted the *prima facie* presumption of probable cause established by the grand jury indictment, *see Rose*, 871 F.2d at 352–54, and sufficiently alleged a lack of probable cause, the third element is satisfied here for the purposes of the motion to dismiss. Accordingly, Plaintiff has stated a claim for malicious prosecution against Ayala and Bruno under New Jersey common law, and against Officer Bernal and Sergeant Wells under section 1983.

Next, the Court evaluates whether Officer Bernal and Sergeant Wells are entitled to qualified immunity. "Qualified immunity shields government officials from personal liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Paszkowski v. Roxbury Twp. Police Dep't*, No. 13-7088, 2014 WL 346548, at *2 (D.N.J. Jan. 30, 2014). "While early resolution of qualified immunity issues is desirable, factual issues or factual uncertainty may make an assessment impossible at the complaint stage." *Saint-Jean v. Cty. of Bergen*, 509 F. Supp. 3d 87, 110 (D.N.J. 2020); *see Grant v. City of Pittsburgh*, 98 F.3d 116, 122 (3d Cir. 1996)) ("[C]rucial to the resolution of any assertion of qualified immunity is a careful examination of the record (preferably by the district court) to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).").

A court must engage in the following two-prong inquiry to determine whether qualified immunity applies: (1) whether the allegations, reviewed in a light most favorable to the party asserting the injury, show that defendant's conduct violated a constitutional right, and (2) whether

11

the constitutional right at issue was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts have the discretion to consider either prong of the two-part analysis first. *Id*. at 236. The United States Supreme Court has ruled that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "To make that determination, [a court should] engage in another reasonableness inquiry: 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Santini v. Fuentes*, 795 F.3d 410, 417–18 (3d Cir. 2015) (quoting *Saucier*, 533 U.S. at 202). This analysis is "undertaken in light of the specific context of the case." *Saucier*, 533 U.S. at 201.

Here, both prongs of the analysis indicate that Officer Bernal and Sergeant Wells do not deserve qualified immunity at this stage. Regarding the first prong, this Court has already determined that the allegations, viewed in a light most favorable to Plaintiff, sufficiently state that the officers violated Plaintiff's constitutional rights by maliciously prosecuting her and falsifying evidence.

Regarding the second prong, the Supreme Court has stated that a police officer is not entitled to qualified immunity if "a reasonably well-trained officer in [the defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345 (1986); *see also Kelly v. Borough of Carlisle*, 622 F.3d 248, 255 (3d Cir. 2010). Officer Bernal and Sergeant Wells argue that no reasonable officer in their position would have believed probable cause was lacking because two eyewitness identified Plaintiff as the individual that pointed a handgun at Ayala, and moreover, Ayala provided photographs of Plaintiff's vehicle. Mot. at 20–22. In rebuttal, Plaintiff alleges that: the sole witnesses, Ayala and Bruno, lied to support an ulterior motive and gave poor descriptions of the alleged assailant and weapon (FAC at 4, ¶¶ 3, 4; id. at 5, ¶ 13); Officer Bernal

12

assisted Ayala in writing a fraudulent statement (id. at 4, ¶ 7); there was no weapon found connecting Plaintiff to the crime (id. at ¶ 15); and all officers blatantly violated identification procedures to suggest Plaintiff was the assailant (id. at 5).

The Court finds that there are sufficient allegations here, such that reasonably well-trained officers under the purported circumstances would have known that they lacked probable cause to arrest Plaintiff, and moreover, would have known that the alleged falsification of evidence violated Plaintiff's clearly established rights. *See, e.g.*, *United States v. Brown*, 631 F.3d 638, 649 (3d Cir. 2011) ("[T]he idea of a police officer fabricating facts . . . in order to obtain probable cause is quite obviously repugnant to the Fourth Amendment."); *Molina v. City of Lancaster*, 159 F. Supp. 2d 813, 820 (E.D. Pa. 2001) ("[T]he right to be free from the fabrication of evidence, falsifying documents, and malicious prosecution is clearly established."). The Court notes, however, that the determination of what specific information was available to the officers and whether, given that information, reasonable law enforcement officers in their position could have believed that their conduct was lawful requires development of the factual record. Further development of the record is also necessary to determine whether Plaintiff's allegations of falsification of evidence and perjured testimony are credible. Therefore, qualified immunity is denied at this stage. *See, e.g.*, *Saint-Jean*, 509 F. Supp. 3d at 112 (denying qualified immunity at the 12(b)(6) stage because the record was undeveloped and there were insufficient corroborating factors to support a finding of probable cause); *Molina*, 159 F. Supp. 2d at 820 (denying qualified immunity because Plaintiff alleged that the officers falsified documents and fabricated evidence).

Accordingly, Count I may proceed against Bernal, Wells, Ayala, and Bruno.

> b) **Count III: Violation of the New Jersey Civil Rights Act and the New Jersey Constitution (asserted against Officer Bernal and Sergeant Wells)**

In Count III, Plaintiff asserts a violation of the NJCRA and Article I, paragraphs 5 and 7 of the New Jersey Constitution. FAC at 10–11. She specifically alleges a deprivation of her substantive due process and equal protection rights based on the alleged malicious prosecution against her. Id. at ¶¶ 1–6. As explained in this Court's prior Opinion:

> The New Jersey Constitution, Article 1, ¶ 5 states in relevant part, "No person shall be . . . discriminated against in the exercise of any civil or military right, . . . because of religious principles, race, color, ancestry or national origin." The New Jersey Constitution, Article 1, ¶ 7 states in relevant part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ." The NJCRA, in turn, provides a cause of action for violations of civil rights secured under federal and state law; it was modeled after, and is analogous to, section 1983. *Pettit v. New Jersey*, No. 09-3735, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011). Thus, courts often analyze the sufficiency of the NJCRA and New Jersey constitutional claims—particularly malicious prosecution claims brought under those provisions—through the same lens as a section 1983 claim. *See Coles v. Carlini*, 162 F. Supp. 3d 380, 404 (D.N.J. 2015); *Lucia v. Carroll*, No. 12-3787, 2014 WL 1767527, at *5 (D.N.J. May 2, 2014) (finding that the analysis for plaintiff's N.J. Const. art. I ¶ 7 malicious prosecution claim was the same as the section 1983 claims); *Chapman v. New Jersey,* No. 08-4130, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart").

ECF No. 44 at 15–16.

First, Officer Bernal and Sergeant Wells argue that any NJCRA claim based upon malicious prosecution should be dismissed for the same reason as the section 1983 claim, qualified immunity. *See* Mot. at 19. Because the Court has denied qualified immunity at this stage for the purposes of the section 1983 claim, qualified immunity is also denied for the purposes of the NJCRA claim. *See Faragalla v. Jersey City*, No. 17-3604, 2020 WL 5812798, at *12 (D.N.J. Sept. 30, 2020) ("Because, as discussed above, [the defendant-officer] is not entitled to qualified immunity under Section 1983, summary judgment as to the NJCRA claim is denied as well.").

Second, the State Defendants argue that the Amended Complaint lacks any allegation that Plaintiff was treated differently than other similarly situated individuals, which is required for an equal protection claim under the NJCRA. Mot. at 18. Plaintiff does not appear to oppose that argument and does not address the discrimination claim under the NJCRA anywhere in her opposition. *See generally* Opp. Instead, she concedes to a dismissal of her discrimination claim under the NJLAD, which mirrors her claim under the NJCRA. Opp. at 10. Therefore, as Plaintiff has failed to sufficiently allege differential treatment, and does not appear to oppose a dismissal of her equal protection claims, Count III is dismissed only to the extent that it relies upon a violation of Plaintiff's equal protection rights. *See Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005) (in order to bring a successful claim for denial of Equal Protection under section 1983, a plaintiff must show that she received different treatment than other similarly situated individuals); *Pettit*, 2011 WL 1325614, at *3 (NJCRA claims are analyzed analogously to section 1983).

Accordingly, Count III may proceed against Bernal and Wells but it is dismissed to the extent that it relies upon a violation of Plaintiff's equal protection rights.

### c) Count V: Abuse of Process (asserted against Ayala and Bruno)

In Count V, Plaintiff alleges that Ayala and Bruno improperly abused the legal process "for an ulterior motive not contemplated by law, namely the arrest and incarceration of the plaintiff . . . in order to cause the arrest of the plaintiff for what was merely an alleged minor motor vehicle accident." FAC at 13, ¶ 5. A claim under New Jersey common law for malicious abuse of process claims seeks to hold a defendant liable for "the improper, unwarranted, and perverted use of process after it has been issued . . ." *Ash v. Cohn*, 194 A. 174, 176 (N.J. 1937). "A successful malicious abuse of process claim requires a [p]laintiff to demonstrate '(1) that defendants made an improper, illegal, and perverted use of the process, i.e., a use neither warranted

15

nor authorized by the process; and (2) that in use of such a process there existed an ulterior motive.'" *Cluver v. Borough of Sayreville*, No. 10-3173, 2013 WL 394030, at *8 (D.N.J. Jan. 30, 2013), *aff'd*, 557 F. App'x 180 (3d Cir. 2014) (quoting *Ash*, 194 A. at 176). Special concern is directed to whether the defendant engaged in "further acts" following the issuance of process, which indicate the existence of an ulterior motive. *Cluver*, 2013 WL 394030, at *8; *see Melillo v. Elizabeth Bd. of Educ.*, No. 11-4887, 2012 WL 6725837, at *7 (D.N.J. Dec. 27, 2012). In the context of a criminal prosecution, the issuance of process is the arrest of the plaintiff-victim. *Cluver*, 2013 WL 394030, at *8.

In its prior Opinion, this Court dismissed the abuse of process claim in Plaintiff's initial complaint because she did not explain what Ayala and Bruno's ulterior motive was nor did she allege any specific instances following Plaintiff's arrest that could lead the Court to infer that Ayala or Bruno acted with an ulterior motive. *See* ECF No. 44 at 20–21 ("Plaintiff does not allege that Ayala or Bruno lied during their testimony or otherwise acted in a way suggestive of ulterior motive. Ayala and Bruno's participation as witnesses in a criminal proceeding is not itself indicative of any ulterior motive, and is insufficient to support an abuse of process claim.") (citing *Cluver*, 2013 WL 394030, at *8). Plaintiff has amended her complaint to include the requisite allegations. Specifically, she now alleges that: (1) Ayala and Bruno's ulterior motive was to force the arrest and incarceration of Plaintiff for "an alleged minor motor vehicle incident" (FAC at 13, ¶ 5); and (2) "[f]ollowing the issuance of process, Ayala and Bruno continued to assist law enforcement authorities with the false and malicious prosecution of the plaintiff, by offering false testimony to the Grand Jury and at the *Wade* hearing" (id. at ¶ 4). Plaintiff has sufficiently alleged "further acts" by Ayala and Bruno, following Plaintiff's arrest, which support their alleged ulterior motive. *See Cluver*, 2013 WL 394030, at *8.

16

Neither Ayala nor Bruno argue that the malicious abuse of process claim in the First Amended Complaint should be dismissed. As noted above, Ayala has not filed a motion to dismiss the First Amended Complaint, *see supra* fn. 1, and Bruno has not put forth any arguments for dismissal, *see* ECF No. 53. With no substantive opposition, the Court finds that Plaintiff has adequately stated an abuse of process claim through allegations that Ayala and Bruno: (1) made unwarranted and unauthorized use of the judicial process; and (2) had an ulterior motive. FAC at 12–13, ¶¶ 1–6; *see Melillo*, 2012 WL 6725837, at *7 (plaintiff stated abuse of process claim because he alleged that: (1) the defendants engaged in several distinct acts after the issuance of process, which were unwarranted, and supported an ulterior motive; and (2) the defendant employer's ulterior motives were to make the plaintiff's underlying litigation more expensive and to prevent his employment).

Therefore, Count V may proceed against Ayala and Bruno.

## IV. Conclusion

For the foregoing reasons, the State Defendants' motion to dismiss (ECF No. 51) is granted in part and denied in part, and Bruno's motion to dismiss (ECF No. 53) is denied. Counts II (*Monell* liability) and IV (violations of the NJLAD) are dismissed in their entirety. Count I (malicious prosecution) may proceed against Ayala, Bruno, Officer Bernal, and Sergeant Wells. Count III (violations of the NJCRA) may proceed against Bernal and Wells, but it is dismissed to the extent that it relies upon a violation of Plaintiff's equal protection rights. Count V (abuse of process) may proceed against Ayala and Bruno in its entirety.[6]

---

[6] All claims in Counts II, III and IV that are dismissed in this action are dismissed with prejudice because: (1) amendment would be futile; and (2) Plaintiff has had an opportunity to amend said claims but failed to cure the deficiencies or provide any argument against dismissal. *See Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1196–97 (3d Cir. 1994) (amendment will not be granted if there is "bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment.") (citation omitted).

An appropriate Order follows this Opinion.

**Date:** February 14, 2022

                                          *s/ Claire C. Cecchi*
                                    **HON. CLAIRE C. CECCHI, U.S.D.J.**